In the Matter of KATHERINE B., a Child Alleged to be Abused and Neglected. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Appellants; MARILYN B., Respondent, and NATIONAL BROADCASTING COMPANY, INC., Intervenor-Respondent.

Second Department, April 19, 1993

## APPEARANCES OF COUNSEL

*Robert J. Cimino, County Attorney* of Suffolk County, Hauppauge *(Robert H. Cabble* and *Theodore D. Sklar* of counsel), for Suffolk County Department of Social Services, appellant.

*John F. Middlemiss, Jr.,* Central Islip *(Anthony DiSanti* of counsel; *Richard Aitken* on the brief), *Law Guardian,* for infant.

*James M. Catterson, Jr., District Attorney* of Suffolk County, Riverhead *(William T. Ferris* and *Eileen A. Powers* of counsel), appellant *pro se.*

*Gayle Chatilo Sproul* and *Karen A. Estilo,* New York City, for intervenor-respondent.

*Adam Liptak,* New York City, for The New York Times Company; *Christopher J. Nolan,* Melville, for Newsday, Inc.; *Roger Goodspeed,* New York City, for Capital Cities/ABC, Inc.; *Douglas P. Jacobs* and *Susanna M. Lowy,* New York City, for CBS, Inc.; and *Muriel Henle Reis,* New York City, for Fox Television Stations, Inc., *amici curiae.* (One brief filed.)

## OPINION OF THE COURT

Per Curiam.

The question to be resolved on these appeals is whether the courtroom should be closed to the public and the press in the instant child protective proceeding commenced under Family Court Act article 10. In our view, this question must be answered in the affirmative.

I

The infant Katherine B., who is 10 years old, was allegedly kidnapped by John Esposito, an adult family friend, and imprisoned in an underground dungeon in his home for approximately 16 days in December 1992 and January 1993, where he allegedly sexually abused her. Shortly after her rescue, this child protective proceeding was commenced against her mother, Marilyn B., pursuant to Family Court Act article 10, alleging neglect and abuse. Katherine was placed in a foster home under the supervision of the Suffolk County Child Protective Services. Esposito was indicted on numerous felony counts in connection with the abduction and sexual abuse of Katherine. In addition, the child's so-called "godfather", Salvatore Inghilleri, was indicted in March 1993 on two counts of sexual abuse in the first degree and two counts of endangering the welfare of a child, based upon events which allegedly occurred in 1991.

In the instant child protective proceeding, an application was made by the Suffolk County Department of Social Services (hereinafter the DSS) pursuant to Family Court Act § 1043, in which the Law Guardian and the District Attorney joined, to close the courtroom to the public and the press. They argued, *inter alia,* that closure of the courtroom was authorized by Family Court Act § 1043 and justified in the instant proceeding. Specifically, the applicants argued that as the essential purpose of the proceeding was the protection of the child, continued public and media exposure would not be in Katherine's best interest given the particularly sensitive nature of the proceeding. The District Attorney also argued that extensive media coverage might endanger the fair trial rights of any criminal defendants awaiting trial. In addition, written statements of objection were made to the proposed audiovisual coverage of the underlying proceeding.

In opposition to the application to close the courtroom to the public and the press, the intervenor-respondent, National Broadcasting Company, Inc. (hereinafter NBC), argued that there was a presumption of openness of court proceedings as a matter of constitutional law and State statute, and that the applicants failed to overcome that presumption.

In an order entered March 5, 1993, the Family Court, Suffolk County, denied the application to close the courtroom to the public and the press, and rejected the objections to the proposed audiovisual coverage, stating in pertinent part:

"At the outset the court notes that [Family Court Act]

§ 1043 does not mandate that the general public be excluded from evidentiary hearings held pursuant to [Family Court Act] article 10. The statute unequivocally leaves the question of exclusion to the discretion of the presiding judge, which discretion should be exercised in consideration of the several related statutes, rules and administrative regulations which deal with the issue of public access to Family Court proceedings. * * *

"The movants seeking to cloister the courtroom do not contend that exclusion of outsiders is required based on the possibility of disruption of the proceedings under Rule 205.4 (a) (1), nor do they establish to the satisfaction of the court that the 'orderly and sound administration of justice' requires the exclusion of lay or media observers. Rule 205.4 (a) (3). To the contrary the court proceedings already conducted have been fully attended by the public, the press as well as radio and television and there has been no disruption and no conflict with court administration. As noted in the order of January 26, 1993 the issues presented here were already extensively aired in public when this matter first came to court. The court finds that the same considerations which warranted the presence of the media in the procedural aspects of this matter continue to warrant the presence of the press and the court so holds. Further the court has been impressed that while these proceedings have proceeded over the last six weeks the media attention has been focused in this judicial forum, which has been and can be controlled in futuro, rather than in the home, neighborhood, school and other pursuits of the child where disruption of the infant who is involved in these proceedings could occur unfettered by any guideline or limitations. * * *

"The court does agree, however, that the issues presented in these proceedings are of great public concern generally and specifically ought to be allowed where, as here, the prior media disclosure of the identity of the parties and the nature of the proceedings rule out any compelling privacy interests which would naturally militate against access to the courtroom. There is an important public and legislative educational component to proceedings open to public scrutiny which transcends individual uneasiness and perhaps embarrassment in pursuing the truth of discomforting issues in an open court. Enhancing public understanding of the works of its municipal offices is important if there is to be public confidence in court proceedings. (22 NYCRR § 131.1)".

Thereafter, an application was made for reargument by the DSS, in which the Law Guardian and the District Attorney joined. In support thereof, affidavits were submitted from Katherine and a psychologist, Dr. Anne Meltzer, who had interviewed Katherine alone on January 25, 1993, and February 8, 1993, had observed a supervised visit between Katherine and her mother on February 25, 1993 and had reviewed the child's case record.

The affidavit of Katherine states as follows:

"Katherine [B.], Being Duly Sworn, Deposes and Says:

"My Name Katherine [B.], Age Ten (10) Live At A Foster Home in Suffolk County. I'm Sending You This Statement To Let You Know What My Fellings Are About Cameras In The Court. I Don't Want People To Know What HAPPEND To ME, Because It's None of THERE BISINES"

"A MEAN Little Boy Was Saying Things About ME Last Week and It Made ME Sad. If Everyone Saw MY Life on T.V iT WILL Upset ME AALLOOTT. Please Don't Put MY CASE On T.V, It's BBAADD Enough That It's In The Papers.

"Sincerly,
"Katherine [M.] [B.]
"(signed)".

The affidavit of Dr. Meltzer states in pertinent part, as follows:

"ANNE H. MELTZER, being duly sworn, deposes and says:

"1. That she maintains professional offices for the practice of psychology * * *

"3. That she is a psychologist duly licensed by the State of New York specializing in the evaluation of sexually abused children. That she has testified as an expert witness in approximately 200 matters and has been qualified as an expert on each occasion. In addition, she has interviewed hundreds of sexually abused children. * * *

"6. That she has reviewed information contained in the CPS case record and has interviewed the child. Based upon the information thus available to her, she finds that, at this time, Katherine B. is a child at great emotional risk and subject to being profoundly affected by the revelation of the intimate facts of her life.

"7. That it is her professional opinion that were the facts and circumstances contained in the CPS case record as well as her interviews and the reports of other professionals to be

testified to in an open court setting and thereafter disseminated to the public, there would then, consequently, be created the substantial probability of a profound and long term negative effect upon Katherine's emotional well-being. This would constitute a re-victimization of this child. Katherine is ultrasensitive to public knowledge and exposure of her plight and cannot help but be subject to taunting from her peers which has, in fact, already begun to occur. She herself has indicated to me that she is deeply upset by the media coverage in print and on television and radio thus far, and has great concern about future coverage. She evidences feelings of embarrassment and shame about what has happened to her, which are intensified and exacerbated by her knowledge that these facts are not private. Her awareness that the details of her life are subject to public disclosure has already caused her to avoid disclosing sensitive items of both the recent traumatic events of her life and her feelings. This will quite likely impact on her future therapeutic treatment and make success therein all the more difficult. Clearly, this is not in her emotional best interests.

"8. That the focus of Katherine's concern is not merely the sex abuse and kidnapping incidents which have been reported but also, and significantly, her life prior to that time. Your affiant is advised that all of the testimony and documentary evidence to be produced at trial will directly relate to the child's life and therefore will also have a negative effect on her emotional well being if disclosed to the general public.

"9. That it is her further professional opinion that Katherine B's emotional health would substantially benefit from, and her best interest be served by, a ruling of the Court which would assure her that the intimate details of her life would not be publicly disclosed".

By order entered March 17, 1993, the Family Court granted reargument and adhered to its original determination denying the application to close the courtroom to the public and the "print media". In a subsequent decision, the Family Court reversed itself on the issue of audiovisual coverage, and barred such coverage of the instant child protective proceeding. That decision was upheld by the Administrative Judge of the Suffolk County Family Court, and is not at issue on the instant appeal.

## II

We reject the contention of NBC and the *amici curiae* that

they have a constitutional right of access to child protective proceedings commenced under Family Court Act article 10. Although the Court of Appeals has not directly addressed this issue, it has ruled that the press's constitutional right of access must be based upon a finding that the forum or proceeding has been historically open to the public, and whether public access plays a significant positive role in the functioning of the particular process in question (see, Matter of Johnson Newspaper Corp. v Melino, 77 NY2d 1; see also, Press-Enter. Co. v Superior Ct., 478 US 1, 8-9). Child protective proceedings under Family Court Act article 10 have historically been closed in New York State (see, Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1043, at 380-381; Matter of S. Children, 140 Misc 2d 980, 988), and public access has never played a significant positive role in the functioning of these proceedings.

Other jurisdictions have also rejected the argument that the press has a constitutional right of access to these proceedings.

In the case of In re T. R. (52 Ohio St 3d 6, 15-16, 556 NE2d 439, 449-450, cert denied sub nom. Dispatch Print. Co. v Solove, 498 US 958), the Supreme Court of Ohio held:

"The United States Supreme Court has repeatedly recognized that juvenile court proceedings have historically been closed to the public * * * The need for confidentiality is even more compelling in the case of a child who is abused, neglected, or dependent. The delinquent child is at least partially responsible for the case being in court; an abused, neglected, or dependent child is wholly innocent of wrongdoing. While the public arguably has an interest in delinquency proceedings which is analogous to its interest in criminal proceedings * * * this interest is not present in abuse, neglect and dependency proceedings. Additionally, the effectiveness of the statutes and rules mandating confidentiality of the records of juvenile courts and children's services agencies would be destroyed if the public were allowed access to the proceedings in which the confidential records are generated * * * Accordingly, we conclude that there is no qualified right of public access to juvenile court proceedings to determine if a child is abused, neglected, or dependent" (see also, San Bernardino County Dept. of Pub. Social Servs. v Superior Ct., 232 Cal App 3d 188, 283 Cal Rptr 332). Accordingly, the resolution of the instant appeals hinges on the proper application of this State's

relevant statutory scheme, and it is to this area of inquiry that we now turn.

## III

Family Court Act § 1043 provides as follows: "§ 1043. Hearings not open to the public. The general public may be excluded from any hearing under this article and only such persons and the representatives of authorized agencies admitted thereto as have an interest in the case".

The guidelines to be followed by the Family Court, in determining whether to close the courtroom to the public and the press, are set forth in 22 NYCRR 205.4, which provides as follows:

"205.4 Access to Family Court Proceedings.

"(a) In exercising the inherent and statutory discretion possessed by the judge who is presiding in the courtroom to exclude any person or the general public from a proceeding in the Family Court, the judge may consider, among other factors, whether:

"(1) the person is causing or is likely to cause a disruption in the proceedings;

"(2) the presence of a person is objected to by one of the parties;

"(3) the orderly and sound administration of justice, including the nature of the proceeding and the privacy of the parties, requires that all observers be excluded from the courtroom.

"Whenever the judge exercises discretion to exclude any person or the general public from a proceeding or part of a proceeding in Family Court, the judge shall make findings prior to ordering exclusion".

These guidelines are meant to balance the right of access of the public and the press to judicial proceedings against the State's interest in protecting children from the possible harmful effects of disclosing to the public allegations and evidence of parental abuse and neglect.

The record indicates that all of the parties to the underlying child protective proceedings, viz., Katherine, her mother, Marilyn B., the Law Guardian, the County Attorney, and the District Attorney, are opposed to the presence of the public and the press in the courtroom (22 NYCRR 205.4 [a] [2]). More importantly, the nature of the proceeding and the privacy

rights of Katherine clearly militate in favor of closure of the courtroom in the instant proceeding to the public and the press. The essential purpose of the instant proceeding is set forth in Family Court Act § 1011 which provides as follows: "§ 1011. Purpose. This article is designed to establish procedure to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met".

In this regard, the perspectives of appellate courts in our sister States warrant attention. The Supreme Court of New Jersey has stated (New Jersey Div. of Youth & Family Servs. v J. B., 120 NJ 112, 128-129, 576 A2d 261, 269): "When, for example, sexual abuse is alleged, it is virtually inconceivable that a court could conclude that the best interests of the child would be served by an open proceeding. Similarly, any allegation of physical or psychological abuse or of serious neglect should weigh heavily, if not conclusively, in favor of the closure. The age and maturity of the child also should be considered. Children who must face their peers in school might be subject to special pressures of which the court should be aware. The possibility that a child might be adversely affected by future revelation of embarrassing facts also should weigh heavily in the court's determination".

Again, the Supreme Court of Ohio has stated (In re T. R., 52 Ohio St 3d, supra, at 18, 556 NE2d, supra, at 451): "Finally, intense publicity surrounding the events which have brought a child into the juvenile court may psychologically harm the child, making it more difficult, if not impossible, for the child to recover from those events".

Although Katherine B. requested in her affidavit that television cameras be barred from the courtroom (a request ultimately acceded to by the Family Court), her objection to press coverage is also reflected in that affidavit by her statement therein that "It's BBAADD Enough that It's In The Papers". Moreover, although the fact of her kidnapping and the allegations that she was sexually abused during her approximately 16 days in Esposito's home have received considerable publicity, the precise details of her family life which preceded that unfortunate event have not yet been divulged, and they may well be explored in the underlying child protective proceeding. Finally, the uncontroverted affidavit of Dr. Meltzer indicates

that opening the courtroom to the public and press would "re-victimiz[e]" Katherine, and "have a negative effect on her emotional well being" (22 NYCRR 205.4 [a] [2]).

Since our scope of review of a discretionary matter is coextensive with that of the Family Court, we may exercise discretion independently *(see, Majauskas v Majauskas,* 61 NY2d 481, 493-494). Based on the instant record and the applicable statutory criteria, we are of the view that this child protective proceeding should be closed to the public and to the press.

MANGANO, P. J., BRACKEN, MILLER, O'BRIEN and PIZZUTO, JJ., concur.

Ordered that the appeal from the order entered March 5, 1993 is dismissed, without costs or disbursements, as that order was superseded by the order entered March 17, 1993, made upon reargument; and it is further

Ordered that the order entered March 17, 1993 is reversed, insofar as appealed from, in the exercise of discretion, without costs or disbursements, the order entered March 5, 1993 is vacated, and the application to close the courtroom to the public and to the press is granted.