[647 NYS2d 732]

In the Matter of P. B., Petitioner, v C. C., Appellant. Mara T. Thorpe, as Guardian Ad Litem, Appellant; Associated Press et al., Intervenors-Respondents.

First Department, September 19, 1996

## APPEARANCES OF COUNSEL

*Leonard G. Florescue* of counsel *(Stanford G. Lotwin* and *Linda L. Mellevold* on the brief; *Tenzer Greenblatt, L. L. P.,* attorneys), for petitioner.

*Donald Frank* of counsel *(Bernard G. Post* and *William S. Hochenberg* on the brief; *Post & Frank, L. L. P.,* attorneys), for appellant.

*Mara T. Thorpe* of counsel *(Arlene R. Smoler* and *Robert L. Savino* on the brief; *Morrison Cohen Singer & Weinstein, L. L. P.,* attorneys), for guardian ad litem, appellant.

*Carolyn K. Foley* of counsel *(David A. Schulz, Cameron A. Stracher, Eve B. Burton* and *Eugenie Gavenchak* on the brief; *Rogers & Wells,* attorneys), for intervenors-respondents.

## OPINION OF THE COURT

ROSENBERGER, J. P.

The petitioner and the respondent-appellant are the parents of six minor children ranging in age from 6 to 17. One of these children has achieved professional success as a motion picture actor, and a younger brother has achieved some degree of success in the same field. None of the other children has received any significant degree of public attention. The question here presented is whether the press and general public should be excluded from the courtroom during this child custody proceeding.

The court-appointed guardian ad litem for the children moved pursuant to Domestic Relations Law § 235 (2) for an order directing, *inter alia,* that the proceedings be closed, and that the papers in the proceedings be sealed. The application was joined by the respondent father, as well as the petitioner mother. The court denied the motion on the ground that it had not actually been demonstrated that the children would suffer as a result of publicizing the proceedings, and that a complete restriction of public access was not justified. The court did, however, agree to seal the records of the case pursuant to Domestic Relations Law § 235 (2). Despite what we perceive as best efforts on the part of a well-intentioned Judge, we reverse.

There is constitutional and statutory presumption in favor of public access to judicial proceedings *(see, Richmond Newspapers v Virginia,* 448 US 555; Judiciary Law § 4). The right of public access is not absolute, however, and courts must also exercise their discretion to determine whether a compelling reason for closure exists *(see, e.g., Globe Newspaper Co. v Superior Ct.,* 457 US 596; *Anonymous v Anonymous,* 158 AD2d 296, 297).

To this end, custody disputes commenced in Supreme Court are governed by Domestic Relations Law § 235 (2), which provides that "[i]f the evidence on the trial of such an action or proceeding be such that the public interest requires that the examination of the witnesses should not be public, the court or referee may exclude all persons from the room except the parties to the action and their counsel, and in such case may order the evidence, when filed with the clerk, sealed up, to be exhibited only to the parties to the action or proceeding or someone interested, on order of the court." In New York, both the Supreme Court and the Family Court have jurisdiction over custody proceedings (Domestic Relations Law § 240; Family Ct Act § 651), and "there is no significant distinction between the protection from improper media coverage afforded the subject of a custody dispute" as between the two courts (*Anonymous v Anonymous, supra,* at 297).

The criteria for determining whether or not there is to be press access set forth in Uniform Rules for Trial Courts (22 NYCRR) § 205.4 are therefore applicable to this Supreme Court proceeding. Discretion is granted to the trial court to consider, here, whether "the presence of a person is objected to by one of the parties" (22 NYCRR 205.4 [a] [2]), and whether "the orderly and sound administration of justice, including the nature of the proceeding and the privacy of the parties, requires that all observers be excluded from the courtroom" (22 NYCRR 205.4 [a] [3]). The objective is the proper "balance [between] the right of access of the public and the press to judicial proceedings [and] the * * * interest in protecting children from the possible harmful effects of disclosing [harmful information] to the public" (*Matter of Katherine B.,* 189 AD2d 443, 450). Similar to a child protective proceeding, the controlling consideration here is the best interest of the children (*see,* Domestic Relations Law § 240 [1] [custody]; *Matter of Suffolk County Dept. of Social Servs. v James M.,* 83 NY2d 178 [dispositional hearing in child protective proceeding]).

Our independent review of the facts here presented, in the context of two recent child protective proceedings, *Matter of Ruben R.* (219 AD2d 117), and *Matter of Katherine B.* (189 AD2d 443, *supra),* leads us to conclude that this custody proceeding should be shielded from press access.

Numerous press reports concerning this case have already revealed allegations of alcohol and drug abuse and domestic violence, and have anticipated that the trial will raise questions regarding the care and supervision of these children. As

in both *Ruben R.* and *Katherine B.*, the emotional and educational harm which has already occurred has been explicitly documented. Five detailed affidavits have been submitted by the principal of the children's school, a private tutor, a school psychological consultant, an independent psychologist, and an attorney, all of whom have been involved with the children for a number of years. The affidavit of the school psychological consultant demonstrates that children almost always feel that they are to blame when a family breaks up, that most children use denial as a healthy defense to an acrimonious separation, and that intense media scrutiny would likely cause a child to revert to more destructive alternative defenses.

Affirmations supporting closure have also been submitted by the parties, who attest to the fact that all of the children have already been subjected to derision and embarrassment by their peers, and have suffered educational and emotional difficulties as a result of this spectacle. They maintain that these problems will only be exacerbated if the public and the press have access to this trial. A related problem alluded to in two of the affirmations is that witnesses at trial might constrain themselves from providing the court with the pertinent details for fear that their testimony might be exploited by the press.

The argument in favor of a legitimate public interest in access to this proceeding is also weaker here than in both the child protective proceedings of *Ruben R. (supra)* and *Katherine B. (supra)*. Unlike those cases, there is no governmental entity involved here, nor is there any other public issue concerning this family at stake (*cf., Sprecher v Sprecher*, NYLJ, June 21, 1988, at 21, col 6, 15 Media L Rep [BNA] 1773, 1775, *mod sub nom. Anonymous v Anonymous*, 158 AD2d 296, *supra* [public had legitimate right to be educated as to child-rearing practices of a specific cult community]).

It is virtually impossible to anticipate exactly what will be elicited in the examination and cross-examination of witnesses, given the nature of the case. The guardian ad litem, independent experts, and the parties themselves all envision that damaging information will be elicited. The court's determination that it would reserve the right to entertain in camera offers of proof, and upon appropriate showing, close the courtroom, is not an adequate safeguard for these children. The best efforts of a well-intentioned Judge cannot adequately protect against devastating revelations or allegations which may be adduced in the course of rapidly unfolding examination and

cross-examination in a hotly contested and acrimonious litigation. It is to be remembered that we deal here not with the children's "privacy", but with the protection and preservation of their health and welfare. As we close courtrooms in criminal trials on a regular basis, even in the face of the constitutional guarantee of a public trial (US Const 6th Amend), and even over the objection of one of the parties, in order to protect the health and welfare of an adult police officer (*People v Hinton*, 31 NY2d 71), we should not hesitate to do so when those who are to be protected are defenseless children.

Accordingly, the order, Supreme Court, New York County (David B. Saxe, J.), entered November 30, 1995, which denied that branch of the guardian ad litem's motion seeking closure of the custody proceeding to the public and press, should be reversed, in the exercise of discretion, without costs, and the application to close the courtroom should be granted.

KUPFERMAN, J. (dissenting). The majority recognizes the constitutional and statutory presumption in favor of public access to judicial proceedings (*see, Richmond Newspapers v Virginia*, 448 US 555; Judiciary Law § 4), but takes refuge in two recent child protective proceedings and thus concludes that this custody proceeding should be shielded from press access.

Under the circumstances, where life has meant full-blast press and publicity for the parties involved, they cannot simply turn off the spigot of newsflow (*cf., Shields v Gross*, 58 NY2d 338).

For this Court to equate the parties in the instant action with those in the two child protective proceedings is, by analogy, to consider the tiger and the kitten in the same class. They both may be members of the family Felidae and, therefore, distant relatives, but the striped Asiatic carnivore (Leo tigris), the largest member of the family, is not at all like the furry mouser (Felis catus), the smallest. When one analyzes the matter this way the presumption in favor of public access becomes overwhelming.

WALLACH, NARDELLI and WILLIAMS, JJ., concur with ROSENBERGER, J. P.; KUPFERMAN, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered November 30, 1995, reversed, in the exercise of discretion, without costs, and the application to close the courtroom granted.