OPINION OF THE COURT
Howard Spitz, J.
A human tragedy of great personal and societal proportions occurred on June 1, 1997, when Dr. B. S., an esteemed public figure and spokesperson for human rights, sustained third degree burns to more than 80%- of her body in a fire at her home. Her 12-year-old grandson is accused of setting the fire and is the respondent in this juvenile delinquency proceeding before the court. Dr. S. died on June 23, 1997.
Both the particular circumstances of the case and the general climate in which it occurs have made these proceedings the focus of intense public interest. Not only was Dr. S. a remarkable woman in her own right, she was the widow of civil rights leader M., and the respondent is their grandson. The alleged crime has occurred at a time when there is heightened concern about increased juvenile and domestic violence and a perception that Family Court proceedings are veiled in secrecy. The concern and interest in this case has resulted in phone calls, letters and faxes to the court and in requests by representatives of the print and broadcast media to cover the proceedings.
At the first hearing in this matter on June 2, 1997, a pool of four reporters was admitted into the courtroom, and no objection was raised by the parties. On the following day, June 3, 1997, four reporters and a sketch artist were admitted. Counsel for the respondent orally objected to the presence of the press based on a general statement of potential harm to the respondent. The County Attorney took no position at that time. The *658 court denied respondent’s application to exclude the press, recognizing the presumption of openness of court proceedings, but with the qualification of possible future closure. At the third session on June 6, 1997, with four reporters and a sketch artist present in the courtroom, both parties to the proceeding sought closure to the press. After hearing counsel’s arguments and citing preliminary medical reports from court-ordered physicians which indicated that exposure to the press might compromise further valid and meaningful psychiatric evaluation of the respondent, the court excluded the press from further proceedings to prevent potential harm and trauma to the respondent stating, however, that the role of the presiding Judge is a continuing one as respects closure.
In light of the court’s order of closure on June 6, 1997, the above-captioned news organizations moved by order to show cause to intervene in this action for the purpose of exercising their constitutional right of access to this court and to vacate the court’s order. The parties submitted affidavits and memoranda of law, oral argument was heard on June 24, 1997, and the court reserved decision.
In support of their position, the press contends that public access to judicial proceedings is strongly favored both under the United States Constitution and New York’s Judiciary Law; that the First Amendment guarantees the public and press a right of access to civil and criminal proceedings, which can be overcome only by showing a compelling State interest; and that New York’s statutory presumption favoring public access to judicial proceedings extends to Family Court proceedings.
The respondent and the County Attorney assert that press access to these proceedings is not an absolute right and that the court in this case should exercise its discretion in favor of closure. The County cites concerns related to confidentiality and the rehabilitative function of the Family Court, maintaining that both might be compromised by the presence of the press. Both parties maintain, the respondent most strenuously, that the issue of respondent’s psychological state warrants complete closure.
Upon review and consideration of the order to show cause filed on behalf of the press, the affidavits and memoranda of law submitted by the parties, and the oral argument heard on June 24, 1997, the court now grants the application to the extent of permitting the press to have access to this juvenile delinquency proceeding, subject to certain limitations as hereinafter set forth.
*659 The principle favoring public access to court proceedings is firmly rooted in the First Amendment to the United States Constitution and in Federal and State case law. (Richmond Newspapers v Virginia, 448 US 555; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430; People v Jelke, 308 NY 56.) It is also embodied, with qualification, in New York State Judiciary Law § 4, which states: "The sittings of every court within this state shall be public, and every citizen may freely attend the same”. Courts have found that an open forum serves to protect the accused from "secret inquisitional techniques” and unjust prosecution by governmental authorities and goes to insuring the accused a fair trial (People v Jelke, supra, at 62; Matter of Westchester Rockland Newspapers v Leggett, supra, at 437), and that access to court proceedings promotes public confidence in the judicial process. (Globe Newspaper Co. v Superior Ct., 457 US 596.) Thus both statutory and case law recognize a presumption of openness that, while not absolute, may be overcome only by a finding that closure is essential to preserve higher values and is narrowly tailored to serve that interest. (Press-Enterprise Co. v Superior Ct. of Cal., 464 US 501; Globe Newspaper Co. v Superior Ct., supra, at 606-607; Matter of Westchester Rockland Newspapers v Leggett, supra, at 442.)
With respect to minors, this court must balance the State’s interest in protecting such minors with the legitimate public interest in open judicial hearings. Section 205.4 (a) of the Uniform Rules for Trial Courts (22 NYCRR) sets forth factors that a Judge may consider in exercising discretion as to whether or not to exclude the public from a proceeding in Family Court. They include whether:
"(1) the person is causing or is likely to cause a disruption in the proceedings;
"(2) the presence of a person is objected to by one of the parties;
"(3) the orderly and sound administration of justice, including the nature of the proceeding and the privacy of the parties, requires that all observers be excluded from the courtroom.” (22 NYCRR 205.4 [a].)
Judicial discretion must be exercised against a strong presumption of openness. As outlined above, 22 NYCRR 205.4 (a) provides a set of guidelines to be utilized by the presiding Judge in making a determination, but the existence of any one factor does not presumptively mandate closure.
In applying the guidelines to the instant case, the court finds that members of the press caused no disruption during the *660 initial proceedings and that based on their exemplary conduct, no future disruption is anticipated. It further finds that both the petitioner and the respondent presently object to the presence of the media. As to the final criteria, the news media has not interfered with the sound administration of justice during any of the proceedings thus far, nor has their presence required special accommodations. As to the appropriateness of their presence at future sessions, the court notes that if this matter were a child protective proceeding, the guidelines might more appropriately be applied to mandate exclusion since the minor in such a case is an innocent victim of abuse or neglect. Revictimization may result in such cases because of public exposition of the allegations. Indeed that was the finding, based on a quantum of evidence of harm to the child(ren), in cases cited by the respondent. (Matter of Ruben R., 219 AD2d 117 [1st Dept 1996]; Matter of Katherine B., 189 AD2d 443 [2d Dept 1993]; see also, Matter of P. B. v C. C., 223 AD2d 294 [1st Dept 1996], which rendered a similar result in a child custody case.) However, in the context of this juvenile delinquency proceeding, the minor is the actual party accused of committing a serious crime. Moreover, where as here there has been extensive media coverage of the alleged crime as well as the background of the accused, the court’s responsibility in protecting the minor’s privacy interest must be considered in tandem with its responsibility to consider the need to protect the community. (Family Ct Act § 301.1; Matter of Chase, 112 Misc 2d 436 [Fam Ct, NY County 1982].) As such, the court disagrees with respondent’s contention that this case, at its essence, is a family tragedy which "holds virtually no unique significance to the enforcement of this state’s juvenile or criminal law.” The public, as represented by the press, has a right to know that the court is meeting its responsibility toward the community.
The above notwithstanding, this court is not without sympathy for this respondent and his family. Nor does it take lightly its role in protecting the privacy and the psychological well-being of any alleged juvenile delinquent before it. While much has been said about the potential trauma and harm to respondent if the press is granted access to these proceedings, little has been offered in support of that contention other than speculation, conjecture and assumption. Respondent, in particular, relies on the court’s closure on June 6, 1997, as the basis for his contention that continued closure is warranted, despite the fact that during oral argument respondent acknowledged that the court’s determination was made based on "the first *661 cycle” of reports. Not one medical affidavit in support of the alleged potential harm to the respondent with respect to the presence of the press was proffered. By contrast, when this court ordered closure on June 6, 1997, it was on the recommendation of a court-appointed psychiatrist who was in the process of conducting an evaluation of the respondent. His examination was in the preliminary stages. His advice at the time was that exposure to the press might compromise a further valid and meaningful examination. This American Board Child Psychiatry Diplómate and American Board Psychiatry and Neurology Diplómate has now concluded his evaluation. In response to an inquiry made by the court in its on-going duty to ascertain the impact of the presence of the press on the respondent, this physician suggested that access by the press to the courtroom be limited to two individuals, seated as inconspicuously as possible in the rear of the room, and that no audio-visual coverage be permitted. While the court would agree that gavel-to-gavel audio-visual coverage of these proceedings in their entirety would not be in the best interests of this respondent, the court is not prepared to conclude, based on the evidence presently before it, that any and all coverage would be harmful. Moreover, it is the court’s view that the possibility of dissemination of misinformation in the absence of accurate information is potentially damaging to the respondent as well. Therefore, the court is inclined to follow the advice of its expert in imposing reasonable conditions without unnecessarily depriving the press of access to the court.
As to the County Attorney’s concerns regarding confidentiality and the rehabilitative function of the Family Court, at least one court has opined after making an extensive analysis of this issue: "Public access to juvenile trials does not mean abandonment of the goal of rehabilitation. Nor does it signal an end to the salutary differences between juvenile delinquency adjudication and criminal court conviction * * * [and it] need not affect the confidentiality of records”. (Matter of Chase, supra, at 448-449.) Additionally, this court finds petitioner’s concerns in this regard, and more particularly in this proceeding, to be unsubstantiated and speculative.
The court finds that the First Amendment of the United States Constitution, Federal and State case law, and New York Judiciary Law § 4 strongly favor public access to court proceedings and the presumption of openness, although the right to such access is not absolute. The court finds no compelling circumstance in this case warranting complete closure, having *662 carefully considered the factors articulated in section 205.4 (a) of the Uniform Rules for Trial Courts (22 NYCRR) and the recommendation of the court-appointed psychiatrist. The court finds that the petitioner and respondent have failed to demonstrate to this court the existence of an overriding interest establishing that closure is essential to preserve higher values. (Press-Enterprise Co. v Superior Ct. of Cal., 464 US, supra, at 510.)
In order to preserve the integrity of public proceedings, avoid the dissemination of misinformation, enhance public confidence in the court system, and promote a better understanding of the Family Court, these judicial proceedings must be open to the press, subject to the caveat that no rule is absolute. Justice cannot prevail under a veil of secrecy or behind doors that do not open. Darkness must give way to light.
Therefore, it is hereby ordered that two members of the press be admitted to these proceedings and be seated at the rear of the courtroom; and it is further ordered that there be no audiovisual coverage of the proceedings and that no cameras be permitted inside the courtroom; and it is further ordered that the presence of the press shall be subject to the on-going discretion of the court; and it is further ordered that the.press conduct itself in a manner conducive to the orderly administration of justice.