Matter of M.F. (2006 NY Slip Op 51027(U))

[*1]

Matter of M.F.

2006 NY Slip Op 51027(U) [12 Misc 3d 1164(A)]

Decided on May 22, 2006

Family Court, Bronx County

Malave, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 22, 2006

Family Court, Bronx County
In the Matter of M.F., Respondent.
E-08XXX/06

Nelida Malave, J.
Respondent moves for an Order excluding the press from the courtroom during the fact finding stage of this case. Respondent further moves to exclude the press from obtaining transcripts of the March 7, 2006 court appearance and all subsequent appearances.[FN1] NYP Holdings Inc. represented the general public and the New York Post.[FN2] Respondent is charged with the murder of her newborn baby.[FN3]
In support of her motion, respondent submitted the sworn affidavits of respondent's treating psychiatrist and treating therapist. Respondent's treating psychiatrist testified at the hearing held on May 18, 2006. NY Holdings, Inc. did not present any witnesses.
APPLICABLE STATUTES
The general public may be excluded from any proceeding under this article and only such persons and the representatives of authorized agencies as have a direct interest in the case shall be admitted thereto. F.C.A. § 341.1. The Family court is open to the public. 22 N.Y.C.R.R § 205.4(a).
The general public or any person may be excluded from a courtroom only if the judge presiding in the courtroom determines on a case-by-case basis based upon supporting evidence, that such exclusion is warranted in that case. In exercising this inherent and statutory discretion, the judge may consider, among other factors, whether: (1) the person is causing or is likely to cause a disruption in the court proceedings; (2) the presence of the person is objected to by one of [*2]the parties, including the law guardian, for a compelling reason; (3) the orderly sound administration of justice, including the nature of the proceeding, the privacy interests of individuals before te court, and the need for protection of the litigants, in particular, children from harm requires that some or all observers be excluded from the courtroom; (4) less restrictive alternatives to exclusion are unavailable or inappropriate to the circumstances of the particular case. 22 N.Y.C.R.R. § 205.4(b). (emphasis added).
TESTIMONY AT HEARING Respondent's psychiatrist, testified that he has been employed by the facility where respondent is currently confined for approximately 30 years. Currently, he is the Chief of Adolescence Services and has been treating respondent since her admission to the facility.[FN4] Upon her admission to the facility, respondent made representations that "she wanted to die", however, she did not make any immediate gestures towards suicide. (Transcript pg. 46, ln. 25; pg. 47, ln. 10-13). Respondent's psychiatrist testified that newspapers are often brought into the facility for the children to read and are removed when the information contained therein is inappropriate for the children. (Transcript pg. 49, ln.25-pg. 50, ln. 5). Respondent first became aware of the press coverage in this case when her mother called her on the phone and informed her of the press coverage. This caused the respondent to become extremely upset and distressed. (Transcript pg. 53, ln. 5-14). Further, the staff read the paper and their conversation about the article was overheard by another adolescent resident who confronted the respondent. This also caused the respondent to become upset. (Transcript pg. 54-55). Respondent is currently "clinically less depressed, but still quite prone to suicidal actions." (Transcript pg. 56, ln. 22-23). Respondent has tried to commit suicide on several occasions. (Transcript pg. 57, ln. 1-13). In the psychiatrist's opinion, further press coverage of this case is likely to exacerbate respondent's suicidal condition due to the facility's inability to control the families of the other residents of the facility, their communications and their access to the press coverage of this case. The psychiatrist based his opinion on what happened in the past when respondent became aware of the press coverage due to her family talking to her about it and another resident confronting her about it. Further, it would prevent her from assisting in the defense of this case because she would become more depressed and hopeless. (Transcript pg. 70). At this point it should be noted that there has been no press coverage on this case since March 2005 and yet respondent's suicidal actions continue. (Transcript pg. 73 ln. 17-pg. 74, ln. 12). Respondent's psychiatrist also objected to the court ordering an independent psychiatric evaluation of the respondent as it would create a setback in the respondents progress in treatment. (Transcript pg. 72).
APPLICABLE LAW & ANALYSIS The right of the press and the public to attend criminal trials is guaranteed by the U.S. Constitution. However, this is not an absolute right and may be rebutted by the overriding interest of a party to the case. U.S. Const. First Amend.; Richmond Newspapers vs. Commonwealth of Virgina, et. al., 448 U.S. 555 (1980); The press is not afforded any greater [*3]access to court proceedings than that of the public. Courtroom Television Network, LLC. vs. State of New York, et al. 5 NY3d 222 (2005). An inquiry should be made to determine whether alternative solutions could be implemented to prevent closure and ensure fairness. Richmond Newspapers, supra at 580. Likewise, the press is allowed to attend family court proceedings unless there is a compelling interest evincing the need for closure. Matter of Ruben R., 219 AD2d 117 (1st Dept. 1996); P.B. vs. C.C., 223 AD2d 294 (1st Dept. 1996).
Respondent relies on Matter of Ruben R., supra , in support of the theory that any compromise made by the court to apply the least restrictive alternative to exclusion of the press would be inadequate. Ruben R. dealt with the issue of parental abuse and neglect. The Appellate Division reasoned that although the press had conducted themselves in an orderly fashion, the impact of their presence on the respondent outweighed the public's right to know. The Court took into consideration the affidavits of the children's psychologist who affirmed that press coverage of that case would have a detrimental effect on the children's well-being. Matter of Ruben R., supra at 629. The Court opined that the delicate nature of the testimony that could be elicited in regards to the emotional and sexual abuse suffered by the children warranted the closure of the courtroom to protect the victim's right to privacy.
On the most basic level, Matter of Ruben R. is distinguishable from the case at bar in that Ruben R. addressed the privacy interest of the victims and the instant matter is seeking to protect the privacy interest of the respondent who allegedly committed a juvenile act that if committed by an adult would constitute a crime.
Relying on P.B. vs. C.C., 223 AD2d 294, respondent further alleges that the courtroom should be closed. This case involved the child of two famous people. Utilizing the "Best Interest of the Child" standard, the Court held that the exclusion of the press was warranted so as to protect the privacy interests of the children. Similar to the case at bar, several news stories had already been released about the facts of the case. Additionally, affirmations had been provided as to the detrimental effect that the press coverage had on the children. Distinguishable however, is that the protected party in P.B.vs C.C. were the victims, "defenseless children", not a juvenile delinquent respondent. Supra at 298.
Recently an Appellate Court affirmed an order that excluded the press from a courtroom. The lower court examined the issue of media exclusion in reference to a juvenile delinquency proceeding in family court. In Matter of M.S., 173 Misc 2d 656 (1997), involved the grandson of a famous civil rights activist who was accused of setting fire to the home of his grandmother, also a noted civil rights activist. This grandmother eventually died as a result of the injuries sustained during the fire. The court distinguished Matter of M.S. from Ruben R., P.B. vs C.C and Matter of Katherine B. (citations omitted) which all dealt with media exclusion in family court cases other than juvenile delinquency proceedings. The court evaluated the potential psychiatric trauma to the juvenile delinquent in contrast to the exclusion of the press resulting in misinformation to the public. Matter of M.S., 173 Misc 2d at 660-662. The only medical evidence submitted was the testimony of the court-appointed psychiatrist who upon completion of his evaluation recommended the least restrictive alternative limiting media representation to "two individuals, seated as inconspicuously as possible in the rear of the room and that no audio [*4]visual coverage be permitted." Matter of M.S., at 661.[FN5] This alternative did not compromise the family court's objective of rehabilitation. The court did not credit the initial evaluation of the court-appointed psychiatrist which called for closure of the courtroom to preserve the integrity of the interview. The evaluation of future harm to the respondent was unsubstantiated and speculative. Matter of M.S., at 661. In essence, no compelling circumstance was presented to support the exclusion of the media. See also Matter of Kent, 7 Misc 3d 1031(A) (1st Dept. 2006). (Where the Court held that prior to excluding any person from the courtroom a hearing must be held to determine whether there is a compelling reason to support closure).
This court is very sensitive to the privacy interests and fragile emotional state of the respondent. The respondent's emotional state is of such issue that she is able to waive her right to be present in the courtroom. However, closure of the courtroom carries a higher standard of scrutiny than the respondent being able to knowingly, intelligently and voluntarily waive her right to be present at the fact finding stage. There must be a compelling interest that outweighs the public's constitutional and state statutory right to be present at a criminal trial. Analyzing the facts of the instant case under 22 N.Y.C.R.R. § 205.4(b), this Court finds that respondent has not set forth a compelling reason to warrant closure of the courtroom. Respondent's psychiatrist testified that any press coverage would exacerbate the suicidal ideation from which respondent currently suffers. However his testimony is speculative. Respondent continued to make suicidal attempts after the press coverage in the case ceased. Further, it appears that the catalysts to respondent's desperation were the respondent's own family and the staff members of the facility where the respondent currently resides. The respondent's family, her mother in particular, would also talk to her about the court proceedings. This may also cause the respondent to be upset and withdraw however this is a factor that can not be attributed to press coverage of the case. Further, the facility in which respondent resides can monitor her access to newspapers and instruct the staff members to refrain from discussing this case in the presence of respondent and other adolescent residents, as well as continuing to screen the newspapers that are brought into the facility. The facility successfully arranged the private funeral of the baby without press intervention or knowledge to the residents. The facility may have inadvertently siphoned information to the respondent, but it has also taken the appropriate precautions to prevent this from happening again.
This court does not wish to exacerbate any potential harm of the respondent, however, there is a least restrictive alternative to closure of the courtroom. The press has already agreed to refrain from printing the name of the respondent. (Transcript pg. 36, ln. 4-7). The press is further instructed to refrain from printing the name of the psychiatrist, the name of the facility where respondent resides and the names of the witnesses who testify in the case. This alternative will provide the anonymity that will protect the privacy and rehabilitative interests of the respondent while allowing the public as represented by the press access to the court and the ability to report on the case. Members of the press and the general public are further instructed to sit in the designated area towards the back of the courtroom. The press is limited to one reporter. Audio-visual equipment and sketch artists will not be allowed. Accordingly, the transcripts of the [*5]proceedings are open to the public subject to redactions to reflect the instructions intimated in this decision.
CONCLUSION
Since 1997, the movement of the Appellate Courts is to public access to court proceedings. This Court is not willing to change the precedent at this time. While there may be a compelling interest found under different facts, this court does not find such a compelling interest in this case so as to outweigh the public's right to be informed.
This constitutes the decision of the court.
Dated: May 22, 2006 ENTER
 _____________________
 Hon. Nelida Malave, J.F.C.

Footnotes

Footnote 1: The respondent withdrew her motion to close the exclusion hearing by agreeing to hold this hearing in open court. (Transcript pg. 35 ln. 24-25).

Footnote 2: This Court granted the oral application of NY Holdings, Inc. to represent the interests of the public and the press on March 16, 2006. 

Footnote 3: The respondent is allowed to remove herself from the courtroom during the fact-finding hearing if she becomes overwhelmed by the testimony. In fact, the respondent removed herself during the course of this hearing. See, 2006 WL 1073047 (1st Dept. 2006).

Footnote 4: Respondent's additional treating therapist did not testify at the hearing but was present in the courtroom seated next to respondent. 

Footnote 5: It should be noted that the name of the court appointed psychiatrist was not disclosed in the Matter of M.S. decision.