Matter of A.H. (2007 NY Slip Op 51565(U))

[*1]

Matter of A.H.

2007 NY Slip Op 51565(U) [16 Misc 3d 1124(A)]

Decided on August 8, 2007

Family Court, Richmond County

DiDomenico, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 8, 2007

Family Court, Richmond County
In the Matter of A.H., E.H., Children under Eighteen Years of Age Alleged to be Neglected by Victor H., Respondent.
NN-2734-06

Catherine DiDomenico, J.
By decision March 9, 2007, this Court found that the Administration for Children's Services ("ACS") proved at trial that Respondent Victor H. neglected the subject children when, on June 15, 2006, he drove them to Bear Mountain to witness what Respondent believed would be the attempted suicide of their mother or to otherwise serve as potential alibi witnesses for him in connection with this event. A conference was held in this case on May 24, 2007 for the purpose of scheduling a disposition hearing to determine, among other issues, whether the subject children would be placed with the Commissioner until the next permanency hearing currently scheduled for November 7, 2007 or whether they would be returned to their father, and if so, under what circumstances. At the conference, a reporter from a local newspaper requested that the press be permitted to attend and report on what occurred at that hearing.
Respondent Father and the Law Guardian move to bar press coverage of the hearing. Specifically, Respondent Father asserts that his privacy rights and the privacy rights of his children would be violated by media coverage of these proceedings. The Law Guardian argues that widespread dissemination of the details of this hearing would be detrimental to the emotional well being of the subject children and therefore, would not be in their best interests. ACS takes no position on this motion. No papers were submitted by any news organization in connection with this motion. For the reasons set forth below, the Court finds that the hearing [*2]must be closed to safeguard the privacy interests of the subject children. Accordingly, the motion is granted in its entirety.
The Applicable Law
Pursuant to §1043, child neglect and abuse proceedings may be closed to the general public, including the press, where the nature of the proceeding and the privacy rights of the subject children "clearly militate" in favor of closing the courtroom to the public and the press. Matter of Katherine B., 189 AD2d 443 (2d Dept. 1993). In deciding whether to bar the public and the press from a child abuse or neglect proceeding, the court must consider the factors set forth in 22NYCRR 205.4 which include, the nature of the proceeding, the privacy interests of the parties and whether less restrictive alternatives to exclusion are available and appropriate. The guidelines are "meant to balance the right to access of the public and the press to judicial proceedings against the states interest in protecting children from the possible harmful effects of disclosing to the public allegations and evidence of parental abuse and neglect." In re Katherine B., 189 AD2d 443 (2d Dept. 1993); See also In Re Ruben R., 219 AD2d 117 (2d Dept. 1996); In the Matter of M.F., 12 Misc 3d 1164(A); In the Matter of S./B./B./R., 12 Misc 3d 1172(A), 820 N.Y.S.2d 845 (Fam. Ct. Kings Cty. 2006). The Court must make specific findings prior to ordering exclusion. 22NYCRR 205.4
In making this determination, the Court must carefully consider the children's rights to privacy and the psychological harm that potentially would befall them if the media were not excluded from the proceedings. Matter of Katherine B. 189 AD2d at 451; Matter of Ruben R., 219 AD2d at 122-123. In this regard, the Law Guardian has submitted documentation from Inok K., Licensed Social Worker and Nancy W., Licensed Psychologist indicating that the subject children have been diagnosed with Posttraumatic Stress Disorder as a result of witnessing the death of their mother. According to a psychological evaluation by Nancy W. (Exhibit A dated November 28, 2006) Maternal Aunt and current foster mother Ms. B. reported that on June 15, 2006, the day after the subject children suffered the loss of their mother, she picked the children up from the maternal grandparents home to begin their stay with her as directed by the Court. The circumstances of Mrs. H.'s death was covered in both the print and broadcast media, and as a result, the media appeared outside of the home where the children were staying with Ms. B. Ms. B. had to keep the children away from the windows to avoid being photographed. Ms. B. stated that initially, E. and A. were very quiet and barely spoke, however, eventually when the media left them alone and she could take the children outside to the playground and church they became less fearful. The Law Guardian argues that the subject children have suffered considerably due to the circumstances of this case and the Court must close the courtroom as a means of protecting six-year-old A. and four-year-old E. from further psychological harm.
This Court agrees. As Mr. H. points out in his motion papers, these children will have to continue to wrestle with, among other issues, "what role their father played in this unthinkable tragedy." The fact that Mr. H. is now under investigation for possession of child pornography allegedly found on the family's computer further complicates the issues facing this family. While there has been extensive media coverage of the circumstances surrounding the death of Mrs. H. [*3]and the criminal and civil charges that have been brought against Mr. H. as a result of that event, there has been no information publicly disseminated regarding these children, how they are adjusting to their foster placement, nor the services being afforded to them in an attempt to address their significant mental heath and other needs. To allow the press to cover this hearing would serve no purpose other than to impede the children's attempts to recover from these tragic events and otherwise humiliate and embarrass them. Matter of Ruben R., 219 AD2d at 129-130 (1st Dept. 1996).
In reaching this conclusion, this Court affords little consideration to Mr. H.'s claim that his right to privacy would be violated by allowing media coverage of the disposition hearing. At the last conference, Mr. H. admitted that he granted at least one interview to the same local paper that sought to cover this hearing. The Court rejects as not credible Mr. H.'s claim that he was coerced to grant that interview or otherwise did not understand what he was being asked of him during his lengthy discussion with the news reporter. As Mr. H. has previously waived his right to privacy with respect to media coverage of the charges against him, he cannot now complain that those same rights would be unfairly intruded into by such coverage. Equally unpersuasive is Mr. H.'s claim that his right to a public trial would be violated if the press were permitted to attend in this case. The Court notes that no charges have yet been filed against Mr. H. in connection with the child pornography images allegedly found on the family computer, and therefore, no such right is yet implicated.
Finally, the Court finds that, as the taking of evidence regarding the specific needs of these children and the identification of services necessary to address their needs is the primary purpose for this hearing, there is no less restrictive method other than full closure of the courtroom.
E N T E R:
____________________________
CATHERINE M. DIDOMENICO
JUDGE, FAMILY COURT
RICHMOND COUNTY
Dated:Staten Island, New York
August 8 , 2007