[705 NYS2d 339]

Anonymous, Respondent, v Anonymous, Appellant.

First Department, March 16, 2000

## APPEARANCES OF COUNSEL

*Charles A. Stillman* of counsel (*John B. Harris* on the brief; *Stillman & Friedman, P. C.,* and *Adria.S. Hillman,* attorneys), for respondent.

*Vivian Shevitz* and *Julia Pamela Heit* for appellant.

*Jo Ann Douglas,* guardian ad litem, for infant.

## OPINION OF THE COURT

SULLIVAN, P. J.

In this matrimonial action between, as described by plaintiff father, "well-known public figures of great wealth and prominence[,] * * * [e]ach * * * covered extensively by the media," the hearing court, over defendant mother's objection, granted the father's motion, made pursuant to Domestic Relations Law § 235 (2), to exclude all persons other than the parties, their counsel and the witnesses from the child custody and support trial. The court concluded that closure of the courtroom was in the best interest of the parties' four-year-old daughter. In reviewing the propriety of that ruling, which requires a balancing of the principle that ours is a system of justice premised on public, not private, trials against the court's special interest in protecting minors from harm where sensitive matters are involved (*People v Ferber,* 52 NY2d 674, 679, *revd on other grounds* 458 US 747; *Matter of Ruben R.,* 219 AD2d 117, 123, *lv denied* 88 NY2d 806; *see, Webster Groves School Dist. v Pulitzer Publ. Co.,* 898 F2d 1371, 1375), we are unpersuaded that, based on the present record, the father has made the requisite showing for closure. Accordingly, we reverse.

"Public access to court proceedings is strongly favored, both as a matter of constitutional law (*Richmond Newspapers v Virginia,* 448 US 555) and as statutory imperative (Judiciary Law § 4)." (*Anonymous v Anonymous,* 158 AD2d 296, 297; *see also, Matter of P. B. v C. C.,* 223 AD2d 294, 295, *lv denied* 89 NY2d 808.) The rule that judicial proceedings are open to the public is not absolute; the courtroom may be closed where compelling reasons exist. (*Matter of Herald Co. v Weisenberg,* 89 AD2d 224, *affd* 59 NY2d 378; *Merrick v Merrick,* 154 Misc 2d 559, 562, *affd* 190 AD2d 516; *Matter of P. B. v C. C., supra,* at 295.)

The presumption of openness is particularly subject to challenge where the interests of children are implicated. Thus, Domestic Relations Law § 235 (2) permits the court to close trials to all but the parties and their counsel in, *inter alia*, matrimonial proceedings and proceedings for custody and maintenance of a child. It may do so, however, only "[i]f the evidence * * * be such that [the] public interest requires that the examination of the witnesses should not be public."[1] (*Ibid.*) In addition, Uniform Rules for Trial Courts (22 NYCRR) § 205.4, which has been extended to child custody disputes in the Supreme Court (*see, Matter of P. B. v C. C.,* 223 AD2d, *supra,* at 296), permits the public to be excluded from the courtroom.

In making its closure determination, the court must strike "the proper 'balance [between] the right of access of the public and the press to judicial proceedings [and] the * * * interest in protecting children from the possible harmful effects of disclosing [harmful information] to the public.' " (*Matter of P. B. v C. C., supra,* at 296, quoting *Matter of Katherine B.,* 189 AD2d 443, 450.) "Judicial discretion must be exercised against a strong presumption of openness." (*Matter of M. S.,* 173 Misc 2d 656, 659.) Among the factors the court may consider in exercising its discretion under section 205.4 is whether "the orderly and sound administration of justice, including the nature of the proceeding, the privacy interests of individuals before the court, and the need for protection of the litigants, in particular, children, from harm," requires closure. (Uniform Rules for Trial Cts [22 NYCRR] § 205.4 [b] [3].)

Domestic Relations Law § 235 (2), pursuant to which, as noted, the father moved, authorizes closure not because of the private interests of the litigants but only if the public interest requires it. (Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C235:2, at 174.) The father does not, however, argue that the public interest requires closure. Rather, he points to the "threat" that the "custody and support trial will expose the specific actual details of the child's day-to-day existence with each of her parents" and argues that if these details are exposed, "the parties' and the child's safety and security would be severely compromised." The possibility of revelations of such "specific actual details" is,

---

**1.** It has been said that the public interest exception of Domestic Relations Law § 235 (2) might be a sufficient justification to close the courtroom to protect children from the consequences of trial testimony. (Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C235:2, at 175.)

at best, highly speculative. In any event, less restrictive alternatives to closure can be employed to assure that details which may compromise the child's safety are not mentioned in open court (*see*, Uniform Rules for Trial Cts § 205.4 [b] [4]), e.g., excluding the public and the press from a limited portion of the testimony. Thus, in our stay of the order appealed from pending determination of this appeal, we directed the trial court "to implement, in its discretion, alternative security measures."

The second ground that the father puts forth for closure is the risk of psychological harm the child may suffer if the proceedings are conducted in public. Despite extensive media coverage regarding the breakup of the parties' marriage, the court-appointed forensic psychiatrist who examined the child found that although she has "exhibit[ed] a growing sense of awareness of the conflict" and has "raise[d] serious issues of concern to her, including finances and parental conflict," she is nevertheless "very healthy and handling the stress of [the] divorce with great resilience."

While the psychiatrist opined as to the "unnecessary and known risk" that "[k]nowledge of the details of the religious issues, health care issues, financial, security issues, leisure time issues, and general parenting issues will certainly filter down from adults to [the child's] peers," there is no suggestion in her affidavit as to what harm, if any, might result. The psychiatrist's conclusion that "allowing the public and/or the press to attend [the custody] trial will be to expose [the child] to a significantly greater risk of future mental health problems, due to the increase in her exposure to the conflict in her environment," is, based on this record, speculative. The possibility of some unspecified future harm does not constitute a compelling interest justifying closure. The questions at issue in this custody dispute are fairly common and stand in stark contrast to the expected "damaging information" justifying closure in *Matter of P. B. v C. C.* (223 AD2d 294, 297, *supra*).[2] If a custody trial can be closed to the public on the showing made here, then closure of the courtroom would be the rule, not the exception, in custody cases. The argument can always be made—in any case—that it is in the child's best interest to shield her life from public gaze. Neither Domestic Relations Law § 235 (2) nor Uniform Rules for Trial Courts § 205.4 contemplates such a result.

---

**2.** The case for closure is no stronger with respect to the father's nine-year-old daughter from an earlier marriage.

The father relies primarily on *Matter of P. B. v C. C.* (223 AD2d 294, *supra*), a highly publicized custody dispute between the parents of six children, one of whom was a successful film actor. That case, which involved allegations of drug and alcohol abuse and domestic violence, resulting in emotional and educational harm to the children that, our Court noted, had been "explicitly documented" (at 297), is factually distinguishable from this one.

*Matter of Ruben R.* (219 AD2d 117, *supra*), also cited by the father, is even more inapposite. There, the Court granted an application to exclude the press from child protective proceedings against the parents of the five surviving siblings of Elisa Izquierdo, a six-year-old child who died as a result of head trauma and whose mother was indicted in connection with her brutal murder. The child's death was the subject of intensive press scrutiny, including a cover article in Time magazine. The mental health experts who examined the children, who were, understandably, already in a fragile state, agreed that public exposure of the details concerning the "horrific and numbing" allegations of abuse and neglect would result in " 'revictimization' " of the children and cause them to suffer irreparable harm. (*Supra,* at 119, 128.) The vague and conclusory speculations of psychological damage in this case pale in comparison.

We also disagree with the trial court's suggestion that there is no public interest to be served by keeping the proceedings open and its conclusion that "[t]here is nothing but a prurient interest in this case." It is not, in the first instance, for the courts to identify the interest to be served by a public proceeding; the presumption is that courtrooms be open to public scrutiny. The burden is on the party seeking closure to show a compelling interest which justifies that relief. In any event, there is an important societal interest to be served by conducting this proceeding in an open forum. Open hearings are more conducive to the ascertainment of truth. The presence of the public "historically has been thought to enhance the integrity and quality of what takes place." (*Richmond Newspapers v Virginia*, 448 US, *supra,* at 578.) Indeed, "public access is an indispensable element of the trial process itself." (*Supra,* at 597 [Brennan J., concurring].) Litigants, and the public as well, must be secure in the knowledge that all who seek the court's protection will be treated evenhandedly. Open trials "promote confidence * * * [by] avoid[ing] the suspicions which always attend secrecy." (*United States v Consolidated Laundries Corp.*, 266 F2d 941, 942.)

Moreover, even if this particular controversy did not implicate a public interest, "[i]t is desirable that the trial * * * take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." (*Cowley v Pulsifer*, 137 Mass 392, 394 [Holmes, J.]; *Publicker Indus. v Cohen* 733 F2d 1059, 1069.) In a case such as this, which will inevitably attract public attention whether the proceedings be open or closed, it is even more important that the trial be held in an open forum.

None of this is to say, however, that, upon a proper evidentiary showing, not present in this record, the trial court may not consider a limited closure to balance the child's need for protection from the disclosure of certain information which might cause substantial harm to the child if permitted to be made public (*see, Matter of Katherine B.*, 189 AD2d 443, 450, *supra*) with the countervailing protections that an open courtroom can provide (*see, United States v Consolidated Laundries Corp.*, 266 F2d 941, 942, *supra*), while keeping in mind the strong public policy favoring public access to court proceedings (*Richmond Newspapers v Virginia*, 448 US 555, *supra*; *Anonymous v Anonymous*, 158 AD2d 296, 297, *supra*).

Accordingly, the order of the Supreme Court, New York County (Eileen Bransten, J.), entered on or about October 8, 1998, which granted plaintiff's motion to close the courtroom during the custody and child support trial, should be reversed, on the law and on the facts, without costs or disbursements, and the motion denied.

NARDELLI, WALLACH, SAXE and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered on or about October 8, 1998, reversed, on the law and the facts, without costs or disbursements, and plaintiff's motion to close the courtroom during the custody and child support trial denied.