OPINION OF THE COURT
Brian D. Burns, J.
In 1998, after an eight-day hearing, the court awarded custody of Brianna Winslow to her father, Mark Winslow. Almost immediately thereafter, Brianna and her mother, Vicky Shaffer, disappeared. They were gone roughly three years, eluding a search by federal, state, and local law enforcement. Ms. Shaffer returned with the child in the spring of this year. The authorities arrested her, and placed the child with Mr. Winslow in accordance with the existing court order.
Ms. Shaffer subsequently filed an action to enforce an agreement between her and Mr. Winslow that was apparently negotiated while she was in hiding and induced her return. The agreement, signed by the Law Guardian as well as the parties, would return primary physical custody of Brianna to Ms. Shaffer. Mr. Winslow refuses to comply with the agreement, contending that he signed it under duress.
A hearing commenced on July 2, 2001. At the conclusion of the first day of testimony, Ms. Shaffer’s counsel announced his intention to call the Law Guardian as a witness when the hearing resumes. The matter presently before the Court is the Law Guardian’s order to show cause seeking to prohibit either party from calling her as a witness.
*862 The Law Guardian has also moved the Court to close the courtroom to media and the public for the duration of this case. As this issue has far-reaching implications beyond the present case, the Court shall address it first.
While an open courtroom promotes the informed citizenry crucial to democratic participation, the Court understands the concerns put forth by the Law Guardian. However, Uniform Rules for Trial Courts (22 NYCRR) part 205 spells out the policy for public and media access to Family Court proceedings. That section creates a presumption of an open courtroom, with exceptions only in unusual circumstances. The Law Guardian has not demonstrated that the circumstances in this case overcome the presumption of an open courtroom. (See Anonymous v Anonymous, 263 AD2d 341, 345 [1st Dept 2000] [“The burden is on the party seeking closure to show a compelling interest which justifies that relief’].)
She has stated her belief that an open courtroom adversely affects the actions of lawyers, witnesses, and judges, and urges the Court to put the best interests of the child ahead of what she terms the media’s interest in profit. While the Law Guardian leaves out of the equation the public’s right to know, her effort to shield her client from any potential harm (including from publicity) is appropriate.[1] However, the debate between proponents and opponents of an open courtroom has already taken place. It culminated in a policy binding on the courts. That policy, as noted, creates a presumption of an open courtroom.
Put differently, the Law Guardian’s objections to an open courtroom in this case would apply to every custody case.[2] The drafters of the New York Uniform Rules for Trial Courts take a different view from her, and their view is binding on this Court.
We now turn to the Law Guardian’s request for an order prohibiting the parties from calling her as a witness. While there are reported cases in which Law Guardians have testi *863 fled, (see, e.g., Matter of Rodriguez v Medina, 277 AD2d 144 [1st Dept 2000]), several Third Department cases seem to suggest that a Law Guardian should not be called to testify. (See Matter of Morgan v Becker, 245 AD2d 889, 892 [3d Dept 1997] [“(I)n our view, it was inappropriate for Family Court to allow the Law Guardian to be called as a witness for one of the parties”]; Matter of Angelina AA., 211 AD2d 951, 953 [3d Dept 1995] [“Family Court appropriately refused to permit the Law Guardian to testify”]; Bentley v Bentley, 86 AD2d 926, 927 [3d Dept 1982] [upholding “Family Court’s refusal to allow cross-examination of the Law Guardian”].)
In context, however, the Courts’ concern in those cases was a breach of the attorney-client privilege. Thus, in Morgan v Becker (supra), the Court found that any error in permitting the Law Guardian to testify was harmless because the “testimony was limited to her observations during home visits * * * Additionally, the children in this proceeding were too young to be interviewed; thus, the issue of confidentiality with respect to any privileged communications between the children and their Law Guardian did not exist.” (245 AD2d at 892.) Similarly, in Matter of Angelina AA. (supra), the Court noted that “Angelina had an attorney-client relationship with her Law Guardian and * * * the record does not reflect any willingness on the part of the child to waive her privilege and permit her Law Guardian to testify.” (211 AD2d at 953.) Likewise, in Bentley (supra), the Court noted that the Law Guardian’s interviews with the children “are privileged * * * and, as such, is not subject to cross-examination.” (86 AD2d at 927.)
Unlike those cases, here the Law Guardian’s testimony would concern not privileged material but solely her involvement with an outside event — the agreement that brought back Ms. Shaffer and Brianna. The Law Guardian asserts that she has “no relevant evidence or testimony to offer,” but that seems questionable since she signed the agreement at the heart of this case.
In his answering affidavit, Ms. Shaffer’s counsel explains his interest in calling the Law Guardian to testify. At the 1998 hearing the Law Guardian favored Ms. Shaffer retaining custody, but has now changed her position. Ms. Shaffer’s counsel asks: “Why did she sign the agreement allowing physical custody to remain with the mother? Why does her position differ now?” He wishes to elicit her response to these questions.
A Law Guardian’s opinion about custody is not a proper subject for testimony. However, Ms. Shaffer’s counsel does raise *864 a possible legitimate basis for calling the Law Guardian as a witness. The central issue in the case is whether Mr. Winslow signed the agreement under duress. Under New York law, duress appears to have an objective as well as subjective component. (See Eadie v Slimmon, 26 NY 9 [1862].) In other words, the case may turn not only on how Mr. Winslow felt when he signed the agreement, but also on whether those feelings were reasonable. Insofar as the Law Guardian herself signed the agreement, her reasons for doing so may be relevant to that determination (even though she was obviously not in the identical position of Mr. Winslow). Accordingly, the Law Guardian may be called to testify on the limited issue of her state of mind when she signed the agreement.[3]
The Department of Social Services (DSS) attorney argues that an attorney may be called to the witness stand only when her testimony is "necessary.” While there is dicta that might seem to that effect in cases he cites, as well as in the Court of Appeals case S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp. (69 NY2d 437 [1987]), these cases concern when an attorney’s prospective testimony requires her disqualification, not when an attorney may be called to testify. The Court does not construe these cases as prohibiting an attorney from testifying unless the testimony is "necessary.”[4]
The DSS attorney quite properly asks the Court to address whether the Law Guardian’s prospective testimony requires her disqualification. New York law has a specific pro *865 vision governing this situation. (Code of Professional Responsibility DR 5-102 [22 NYCRR 1200.21].) The Court finds two subdivisions of this provision particularly germane. First, section 1200.21 (a) (4) says an attorney may testify and remain on the case “if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case.” Second, section 1200.21 (d) states that if “after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer * * * may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client.”
Consideration of these provisions leads to the conclusion that the Law Guardian’s limited testimony does not require her disqualification. As this case dates back several years, it would work a substantial hardship on Brianna to replace her attorney with someone unfamiliar with the case’s extensive history. Moreover, the Court sees no reason to believe that the Law Guardian’s testimony will be prejudicial to Brianna or otherwise aifect the Law Guardian’s ability to represent the child.
The case law suggests that a party seeking disqualification carries a heavy burden of demonstrating that the attorney’s testimony would compromise her ability to represent her client. (See, e.g., Broadwhite Assocs. v Truong, 237 AD2d 162, 163 [1st Dept 1997]; S & S Hotel v 777 S. H Corp., 69 NY2d 437 [1987].) In this case, it seems unlikely that this burden can be met.[5]
Finally, the Law Guardian requests that, if she is called to testify, a protective order be issued setting forth specific guidelines regarding the scope of her testimony, so as to protect the attorney-client relationship. A detailed protective order is unnecessary. This opinion plainly spells out the limited basis of permissible questioning, and the Law Guardian is free to object to questions outside that scope or to any questions that *866 she cannot answer without violating the attorney-client privilege.
In accordance with the above, the Law Guardian’s requests for an order to close the courtroom and an order prohibiting her testimony are denied.

. That said, her views concerning an open courtroom run contrary to a long Anglo-American tradition. (See Anonymous v Anonymous, 263 AD2d 341, 345 [1st Dept 2000] [“Open hearings are more conducive to the ascertainment of truth”]; Amar & Hirsch, For the People: What the Constitution Really Says About Your Rights, at 116 [1998] [“the public’s very presence in the courtroom can discourage judicial misbehavior”].)

. The Law Guardian might reply that this case is unusual because of the intense media and public interest. However, it would be difficult to justify keeping the courtroom open to the public and the media except in those cases where they most wish to attend.

. This ruling should not be construed as an invitation to call lawyers as witnesses. That practice should be limited to unusual circumstances, and there is additional reason to resist the calling of Law Guardians, since their clients are generally too young to waive the privilege or give informed consent. This case presents a rare situation where the Law Guardian was involved in a discrete circumstance outside the lawyer-client privilege. As the opinion makes clear, the Court will not permit the Law Guardian to be questioned about matters within the privilege, or about her opinions concerning custody.

. Even if the Court were to hold otherwise, the Law Guardian’s limited testimony might still be admissible. An ambiguity involving the word “necessary’ arises. Under the dictionary definition, necessary means indispensable or essential. But in common usage (e.g., the scolding question, “Is that behavior necessary?”), it means useful or valuable. This ambiguity has had important jurisprudential ramifications, as when Alexander Hamilton and Thomas Jefferson debated the meaning of the Constitution’s “Necessary and Proper” Clause (US Const, art I, § 8, cl [18]; see Jefferson Powell, The Political Grammar Of Early Constitutional Law, 71 NC L Rev 949, 956 [1993]). As a signatory of the agreement in question, the Law Guardian’s testimony could be necessary in the looser sense, i.e., valuable even if not indispensable.

. To date, no motion has been made to disqualify the Law Guardian. The Court has nevertheless chosen to address the issue, because Ms. Shaffer’s counsel has raised the possibility of moving for disqualification down the road and the DSS attorney reasonably requested a ruling at this time, which may provide guidance and prevent future disruption. Needless to say, the Court would revisit the issue of disqualification after the Law Guardian testifies, if either party asserts that the testimony has somehow compromised her ability to represent Brianna.