OPINION OF THE COURT
Jeffrey S. Sunshine, J.
Introduction
Plaintiff mother moves by postjudgment motion, dated July 18, 2012, for an order granting (1) that the courtroom be sealed when witness S.[1] testifies about the defendant father’s alleged abuse of her and (2) such other and further relief that the court may deem just and proper. Defendant father moves by order to show cause, dated August 17, 2012, for an order: (1) directing witness S. to turn over her complete and unredacted diary covering the period of time from when she first met the defendant father through September 30, 2012, including the period of time from January 1, 2002 to December 31, 2007; or, in the alterative, (2) precluding witness S. from testifying in the instant matter if she disposed of her diary; (3) directing witness S. to provide the full name, contact information, and licensing information of the mental health professional with whom she discussed the allegations against the defendant father referred to in her affidavit, dated April 11, 2012; (4) directing witness S.’s mental health professional to produce S.’s treatment records for review and inspection; (5) granting defendant father leave to depose witness S.; (6) granting defendant father leave to serve a demand for a bill of particulars on the plaintiff mother with respect to witness S.’s testimony; and (7) granting such other and further relief as the court deems just and proper.
The mother’s counsel filed a memorandum of law on July 17, 2012. Father’s counsel filed an affirmation dated August 16, 2012. On September 6, 2012, the Attorney for the Children filed an affirmation taking no position either in support or opposi *490 tion to plaintiff mother’s request that the courtroom be sealed during witness S.’s testimony and for such relief as the court deems just and proper. The Attorney for the Children filed a second affirmation, dated September 6, 2012, requesting in full the same relief sought by defendant father’s order to show cause, dated August 17, 2012. Father’s counsel filed an affirmation in response, dated August 31, 2012. Mother’s counsel filed a reply affirmation, dated September 7, 2012. Father’s counsel filed an affirmation, dated September 7, 2012.
Background
The parties were divorced on July 1, 2010, when a judgment of divorce was entered by this court. The parties also entered into a stipulation of settlement, dated July 7, 2008, and an addendum to the settlement agreement, dated February 25, 2010. The parties have two children of the marriage, a boy and a girl who are 11 and 9 years of age, respectively.
The judgment of divorce provided that the parties have joint legal custody of the minor children of the marriage, with the mother having physical and residential custody of the children. The parties stipulated in the settlement agreement that the father would have alternating weekend visitation and alternate holidays with the children.
On February 21, 2012, the mother filed an order to show cause seeking permanent supervised visitation between the father and the children, as well as the interim relief of complete suspension of the father’s visitation, pending resolution of the motion, based on allegations made by mother’s sister, S., recently revealed, that in 2002, when she was 10 years old, the father sexually abused her and that the abuse continued for a period of three years.
The Facts
Mother proffers that her sister, S., will testify that from 2002, when she was 10 years old, through 2005, the father touched her in a sexually inappropriate manner. The father denies the allegations. The sister submitted two affidavits that contain these allegations: an affidavit dated April 11, 2012 in support of mother’s order to show cause, and an affidavit dated July 17, 2012, in support of the mother’s motion to seal the courtroom.
In S.’s affidavit, dated April 11, 2012, she asserts that “for a period of approximately three years beginning when I was ten years old and continuing until I was thirteen years old, my *491 older sister’s husband, defendant [U.B.], sexually abused me.” S. states that the defendant initially engaged the 10 year old in a process by which defendant would ask S. if she wanted to play a game and then “tap [her] at various parts of [her] body and ask [her] to tell him ‘where [she] felt it.’ ” Mother’s sister further asserts in her affidavit that the father would try to pick up her shirt and rub her bare back and exposed breasts, despite her attempts to keep her shirt down and prevent the touching. S. also states in her affidavit that “on one occasion, I awoke in my bed to Defendant placing his hands in my pants.”
The mother’s sister states that in 2011 she discussed her allegations against the father with a therapist and that because of the father’s conduct she suffered from psychological problems. S. states in her affidavit, dated April 11, 2012, that
“in recounting the details [of the alleged sexual abuse] with my therapist, I also came to realize that I had a duty to come forward. My niece is approaching the age that I was when Defendant first started abusing me. I would not be able to live with myself if my niece was subject to the same abuse.”[2]
The mother annexed heavily redacted excerpts of her sister’s childhood diary to her order to show cause, which sought supervision for all of the father’s contact with the children. In the diary, the mother’s sister allegedly memorializes her feelings concerning her interactions with the father during the time that the alleged sexual abuse took place. In her affidavit, dated September 7, 2012, S. states that she was asked by mother’s counsel to provide him with diary entries relating to the father’s abuse. S. states in the same affidavit, dated September 7, 2012, that upon reviewing the diary she was embarrassed by the private childhood thoughts that it contained. After reviewing the diary, S. instead provided heavily redacted excerpts of her diary to mother’s counsel. S. states that she did not want the mother’s counsel to review her diary in its entirety and that the redacted portions are unrelated to the father’s alleged abuse of her.
In the affidavit, dated September 7, 2012, in opposition to the father’s order to show cause, which sought to preclude her from testifying because the diary had been destroyed, S. states that since providing the excerpts of her diary to the mother’s counsel, *492 she “decided that [she] did not want anyone else to review it,” that she “discarded it in the trash,” and that she no longer possesses the diary. She states that she believed that she would not be asked to submit the diary after providing the excerpts to mother’s counsel. She also states that she was not instructed to discard the diary and that she did not tell anyone that she discarded the diary until several months after she threw it away.
At the initial application, this court temporarily modified the father’s overnight visitation on the basis of the allegations and ordered an investigation by the New York City Administration for Children’s Services (ACS). The ACS report indicates that the children stated that the father has not touched them in a sexual or inappropriate manner and that they feel comfortable being around him. The Attorney for the Children does not allege that the father has conducted himself inappropriately with the children, and has indicated that the children want to have unrestricted access to their father. At present the father visits with the children in public places only, pursuant to this court’s order, dated March 12, 2012. The parties also consented to public visitation in a stipulation, dated April 12, 2012.
While initially opposing the mother’s application for a modification of visitations, the Attorney for the Children withdrew the objection once S. signed a corroborating affidavit and submitted the redacted copies of her diary. At oral argument, the Attorney for the Children requested that the mother provide the court with the entire diary for in camera inspection.
In her affidavit, dated July 17 2012, in support of the mother’s application to seal the courtroom, S. requests that the courtroom be sealed during her testimony. She states that she is “embarrassed about what occurred and extremely worried about what will happen to my reputation if others learn about what happened” and that she is “anxious about testifying.” The father opposes the sealing of the courtroom.
Discussion
Sealing the Courtroom
Public access to courtrooms is strongly favored as a matter of constitutional law and as a statutory presumption (see Richmond Newspapers, Inc. v Virginia, 448 US 555 [1980]; Judiciary Law § 4). Courts must also exercise discretion in determining whether a compelling reason for closure exists (see Globe Newspaper Co. v Superior Court, County of Norfolk, 457 US 596 [1982]; see also Anonymous v Anonymous, 158 AD2d 296, 297 [1st Dept 1990]).
*493 The mother contends that the courtroom should be sealed for the duration of S.’s testimony for two reasons: (1) to protect the children by ensuring that they do not learn about their father’s alleged conduct, and (2) to limit the stress on S.
In Family Court and child custody proceedings, the court must balance the right of access to the judicial proceedings against the interest in protecting children from the possible harmful effects of public testimony (see Matter of Katherine B., 189 AD2d 443, 450 [2d Dept 1993]; Matter of P.B. v C.C., 223 AD2d 294, 296 [1st Dept 1996]; Anonymous v Anonymous, 263 AD2d 341, 343 [1st Dept 2000]). In child custody proceedings, closure of the courtroom may be justified if the interests in protecting the children from the harmful effects of disclosing information to the public outweigh the need for a public trial (see PB. at 297).
Justification for closure of the courtroom exists when there is high media scrutiny in the case and where there is a showing that a child will be re-victimized if the public and the press have access to the proceedings (Matter of Katherine B. at 451-452) or when it has been explicitly documented that the children have suffered previously from media coverage (P.B. at 297). However, to justify closure, the harmful effects on the children should be concrete and documented rather than speculative (see P.B. at 297; Anonymous, 158 AD2d at 297; Anonymous, 263 AD2d at 342). When the effects of open court testimony on the children are only speculative, closure of the courtroom is not justified (see Anonymous, 263 AD2d at 346).
In the case at bar, there are no contentions that the proceedings will be subject to high media scrutiny. Furthermore, the harmful effects on the children are not explicitly documented. Mother’s counsel posits in his memorandum of law, dated July 17, 2012, that the children’s aunt, S., will testify that the father sexually molested her, that “[t]his information should be kept from the children and not open to the public where the information can make its way to the children,” and that “[f|t is evident that the children will be harmed by such knowledge and should be protected.” Mother provides no concrete documentation of harm to the children nor does she identify the actual specific harmful effects that testimony in open court would have on the children. Mother merely posits that it may result in some possible unspecified future harm, which does not constitute a compelling interest that would justify closure of the courtroom.
The second reason provided by the mother for closure of the courtroom is to prevent the stress that S. would suffer if she is *494 required to testify in open court with the father, whom she alleges sexually abused her, present. This court is sensitive to the difficulty of testifying to the subject matter of sexual abuse; however individuals are often called upon to testify to difficult and deeply personal matters and restricting the public’s access to the courtroom should be limited.
The father objects to closing the courtroom, arguing that the reasons the mother gives for sealing the courtroom do not rise to a level that would support closure of the courtroom because it is based on the sister’s “garden variety discomfort”[3] and because the mother has not shown specific harm to the children that would occur if the courtroom remains open.
Domestic Relations Law § 235 (2) provides that the court may seal the courtroom if it is convinced that the “public interest” requires closure. Here, the court must balance the difficulty and trauma that the witness may experience with the right to litigate in a public courtroom. There is no blanket exception to the right of the public to an open courtroom that allows an alleged victim of sexual abuse to testify in a closed courtroom. Rather, there is a strong presumption that the courtroom should be open to the public (Judiciary Law § 4). While the court encourages alleged victims to come forward and is extremely sensitive to the difficulty of the requirement to testify in public, the public’s right to observe the proceedings, as well as the right of the individual accused of committing sexual abuse to confront the accuser in a public courtroom, as he or she so desires, must prevail.
The mother’s application to seal the courtroom is denied. Spoliation
“The Supreme Court has broad discretion in determining what, if any, sanction should be imposed for the spoliation of evidence” (Ortiz v Bajwa Dev. Corp., 89 AD3d 999, 999 [2d Dept 2011]; Scarano v Bribitzer, 56 AD3d 750 [2d Dept 2008]; De Los *495 Santos v Polanco, 21 AD3d 397 [2d Dept 2005]). “When a party negligently loses or intentionally destroys key evidence, thereby depriving the non-responsible party from being able to prove its claim or defense, the responsible party may be sanctioned by the striking of its pleading” (Baglio v St. John’s Queens Hosp., 303 AD2d 341, 342 [2d Dept 2003]). A less severe sanction, such as preclusion of evidence or testimony, is appropriate when the missing evidence does not deprive the moving party of the ability to establish his or her defense, and when the responsible party did not lose evidence intentionally or in bad faith (see De Los Santos at 398; see also Scarano at 750; Mylonas v Town of Brookhaven, 305 AD2d 561, 563 [2d Dept 2003]).
“Under the common-law doctrine of spoliation, when a party negligently loses or intentionally destroys key evidence, the responsible party may be sanctioned under CPLR 3126. The court may, under the appropriate circumstances, impose a sanction ‘even if the destruction occurred through negligence rather than wilfulness, and even if the evidence was destroyed before the spoliator became a party, provided it was on notice that the evidence might be needed for future litigation.’ ” (Ortiz at 999 [internal quotation marks and citations omitted]; see also Scarano at 750.)
In situations of negligent destruction of evidence, the court must consider the prejudice resulting from spoliation in determining what type of sanctions are warranted (see Scarano at 750; Mylonas at 563). If one party loses evidence and the loss leaves the other party prejudicially bereft, then the court may punish the responsible party by the striking of its pleadings (see Foncette v LA Express, 295 AD2d 471, 472 [2d Dept 2002]).
The mother contends that she should not be punished for the loss of the diary because it was S. who disposed of the diary. However, a party is responsible for preserving evidence when they are on notice that it may be needed for litigation (see Thornhill v A.B. Volvo, 304 AD2d 651 [2d Dept 2003]). This responsibility to preserve evidence may extend to items that are not in the possession of a party when that party negligently fails to take steps to assure their preservation (Amaris v Sharp Elecs. Corp., 304 AD2d 457 [1st Dept 2003]).
Here, the mother requested and received diary entries from S., who is not a party to the action. The mother submitted S.’s affidavit regarding the father’s alleged sexual abuse along with redacted excerpts of her diary memorializing the father’s *496 alleged sexual abuse. Although mother and her counsel may not have had access to the unredacted diary, mother was on notice, once she utilized and submitted the entries, that the unredacted diary may be needed for litigation. As she submitted the excerpts of the diary, the mother was the party responsible for preserving it, and should have taken steps to ensure the diary’s preservation.
The mother did not dispose of the diary intentionally or in bad faith because there does not appear to be any collusion between the mother or the mother’s counsel and S. to dispose of the diary. S. states that she disposed of the diary out of embarrassment. The mother had greater potential access to the diary than the father and should have taken steps to ensure that it would be preserved, once she relied on it to support her application.
Destruction of the diary severely prejudiced the father. The diary had the potential to provide S.’s thoughts and feelings that were contemporaneous with the father’s alleged sexual abuse. The diary was destroyed, and now the father is unable to verify the sequence of diary entries, challenge the diary’s authenticity or when it was actually written, or use any exculpatory or conflicting information gleaned from the diary. The mother realized the import of the diary early on, as she was the first to bring the diary to the court’s attention and annexed excerpts to her order to show cause seeking to limit the father’s access to supervised visitation with the children. To allow the mother to utilize the diary which was heavily redacted by a witness in pari delicto with her would be severely prejudicial to the father.
As such, the plaintiff mother and the witness S. are precluded from testifying as to the existence, or contents, of the diary at any hearing.
Waiver of the Psychologist-Patient Privilege
Under the psychologist-patient privilege, the confidential relations and communications between a psychologist and his patient are placed on the same basis as those between an attorney and a client (CPLR 4507). As noted by the New York Court of Appeals, a patient waives the physician-patient privilege by putting in issue the condition for which the physician examined the patient (People v Wilkins, 65 NY2d 172, 176 [1985]), but the psychologist-patient privilege is broader (id. at 179). A psychologist, like an attorney, may not be called to testify to the accuracy of a client’s story or provide records of *497 psychological treatment, even when the client puts the matter in issue (id.).
The father argues that the mother’s sister waived the psychologist-patient privilege by placing her mental health at issue by “blaming her emotional troubles on the Defendant” and by “disclosing the content of her communication with her therapist.” In fact, in her affidavit dated April 11, 2012, S. states that because the father abused her, she suffered from psychological problems and that speaking with her therapist encouraged her to come forward with the allegations to protect her niece, who is nearly the same age that S. was when she alleges the abuse occurred. These statements do not put S.’s mental condition at issue. S.’s allegations that the father’s sexual abuse caused her psychological problems is not an issue that is central to this particular custody proceeding. The issue that is central to the proceedings is whether the father sexually abused S. (and if so, whether these children are at risk), not whether the alleged sexual abuse caused psychological suffering or what provoked S. to come forward with the allegations.
The psychologist-patient privilege is broadly construed and does not contain a general public interest exception (People v Rivera, 99 AD3d 535 [2012]). In People v Rivera, the First Department recently held that the trial court improvidently permitted a psychiatrist, who treated the criminal defendant, to testify about defendant’s admissions of sexual abuse (id.). The First Department found that “[although the psychiatrist made a proper disclosure of the abuse, the Tarasoff disclosure did not operate as a waiver of the physician-patient privilege” (id. at 535 [citations omitted]). Using treatment records for the purpose of verifying whether or not the father sexually abused S. is not permitted because of the privileged nature of the psychologist-patient relationship. Furthermore, the court does not want to discourage alleged victims of sexual abuse who are not parties to an action from seeking psychological or psychiatric treatment for fear that the therapeutic setting would not be sacrosanct because it is later violated for litigation purposes.
The application to direct S. to provide the full name, contact information, and licensing information of her mental health professional and the application to direct S.’s psychologist to produce treatment records are denied.
Prehearing Discovery
In the First and Second Judicial Departments it is well established that pretrial discovery on custody matters is gener *498 ally prohibited (see Garvin v Garvin, 162 AD2d 497, 499 [2d Dept 1990]; see also Ginsberg v Ginsberg, 104 AD2d 482, 484 [2d Dept 1984]). The application to grant the defendant father leave to depose witness S. and the application to grant defendant father leave to serve a demand for a bill of particulars on the plaintiff mother with respect to S.’s testimony are denied (see also Fremont Inv. & Loan v Gentile, 94 AD3d 1046 [2d Dept 2012] [a party’s demand for a bill of particulars improperly included requests for information of an evidentiary nature]).

. Throughout this opinion the mother’s sister is identified as S.

. S.’s niece is the child of the parties’ marriage, who is currently nine years of age. S. was 10 years of age when she alleges the father sexually abused her.

. In his affirmation in response, dated August 31 2012, the father argues, “Here, all that is asserted is that the witness is anxious about publicly discussing details of her personal life. This is true of every witness who has, or ever will, testify. Such garden variety discomfort does not justify closure.” The mother in her reply affirmation, dated September 7, 2012, replies that “Defendant . . . makes the unsupported statement that such testimony does not ‘rise to the level that would support closure’ and then preposterously asserts that [S.’s] apprehension amounts to nothing more than ‘garden variety discomfort’ felt by all witnesses.” The court notes that it would never consider or sanction the use of the phrase “garden variety” in the context of the concerns raised.