OPINION OF THE COURT
Doris Ling-Cohan, J.
In this proceeding brought under Criminal Procedure Law § 330.20, the Nassau County District Attorney’s Office seeks an order authorizing the doctors and staff of Kirby Forensic Psychiatric Center to speak with the DA in regards to the treatment and care of W.T. so that it may adequately prepare for a hearing, pursuant to CPL 330.20 (8), to determine whether he is dangerously mentally ill and should be retained at Kirby.
As explained below, the application by the DA is denied, without prejudice, as the DA failed to demonstrate in the within moving papers that W.T.’s medical records, which the DA already possesses, and an independent examination by the DA’s doctors, permitted by statute (CPL 330.20 [15]), would be insufficient to meet the DA’s burden, and that such additional authorization is necessary because the interests of justice significantly outweigh the need for confidentiality (Mental Hygiene Law § 33.13 [c] [1]).
Background
On December 23, 1982, W.T. was committed to the custody of the New York State Commissioner of Mental Health subsequent to a determination that he was not responsible for the charge *413 brought against him, murder in the second degree, by reason of mental disease or defect. He was then confined at Mid-Hudson Forensic Psychiatric Center and subsequently transferred to Pilgrim Psychiatric Center on May 20, 1986.
On or about September 9, 2013, the Commissioner, on behalf of W.T., filed an application for a release order. On November 19, 2013, the Honorable James Hudson signed a release order with an order of conditions, which included: (1) scheduled intermittent substance abuse testing; and (2) notification to the DA within three days if W.T. failed to appear for a scheduled psychiatric assessment or scheduled appointment for injectable medication.
After failing to appear for a scheduled appointment for inject-able medication, W.T. was again hospitalized at Pilgrim Psychiatric Center on January 27, 2014 and held for 60 days. The DA received notice of W.T.’s hospitalization on January 28, 2014. On September 16, 2014, following an application for recommitment made by the DA, W.T. was found to be dangerously mentally ill and was recommitted to Kirby pursuant to a commitment order, where he is currently confined.
On March 9, 2015, an application for a first order of retention was submitted by the Commissioner. In response, W.T., through his attorney, Mental Hygiene Legal Service (MHLS), requested a hearing pursuant to CPL 330.20 to determine whether he continues to suffer from a dangerous mental condition.
As a result, the DA moved for an order directing Kirby to give the DA access to W.T.’s medical records, to which W.T. did not object. On August 26, 2015, the Honorable Jennifer G. Schecter signed a subpoena ordering Kirby to give the DA access to W.T.’s medical records from September 16, 2014 through the date of the completion of the hearing. At that time, the DA also requested permission to speak with the doctors and staff members who wrote the records, and MHLS objected. Subsequently, Justice Schecter directed the DA to make that request by motion, which is presently before this court. MHLS now objects to the DA’s request, arguing that the communications between the defendant and his treating doctors are confidential. Discussion
In support of the within application, the District Attorney argues that: (1) the defendant waived any privileges as to his mental status insofar as it concerns his plea and subsequent *414 proceedings, under CPL 330.20, by putting his mental state at issue by requesting a hearing; (2) because Justice Schecter granted the DA access to defendant’s medical records, the DA is entitled to speak to the doctors and staff who prepared those records; and (3) disclosure is warranted despite the privacy rule, even without the defendant’s consent, because the defendant was given notice of the request for the records.
In opposition, MHLS asserts that: (1) the defendant has not waived his privacy rights in this civil proceeding, unlike the previous criminal action, and that he has not put his mental state at issue by merely invoking his due process right to request a hearing pursuant to CPL 330.20; (2) Mental Hygiene Law § 33.13 (c) (1) protects the defendant’s privacy interests; and (3) providing permission to speak to the doctors and staff is not necessary as the DA has an independent right to request that the defendant be examined by a non-treating psychiatric examiner who may testify at the hearing, alleviating any incursion on the defendant’s privacy (CPL 330.20 [15]).
Pursuant to statutory procedure, when a defendant is in the custody of the Commissioner under a commitment order, the Commissioner must then apply for the first order of retention at least 30 days prior to the expiration of the period prescribed in the commitment order. (See CPL 330.20 [8].) When, as here, a demand is made for a hearing, the court must conduct a hearing, at which “the [C]ommissioner must establish to the satisfaction of the court that the defendant has a dangerous mental disorder or is mentally ill. The [District [Attorney shall be entitled to appear and present evidence at such hearing.” (ici.*
As an initial matter, a hearing pursuant to CPL 330.20 (8) is a civil proceeding. The Court of Appeals has held that hearings under CPL 330.20 “were intended to conform to the requirements for civil commitments.” (People v Escobar, 61 NY2d 431, 438 [1984] [emphasis added], citing CPL 330.20 [21] [c] [“(a)n appeal taken under this subdivision shall be deemed civil in nature”].) A defendant’s plea of not responsible by reason of mental disease or defect in his criminal case, where the defendant waived his privilege, has no bearing on this separate *415 and distinct civil commitment proceeding. (See Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 441 [1979] [“(d)eterminations of. . . lack of criminal responsibility because of mental disease or defect . . . and mental illness for purposes of civil commitment are independent concepts” (citation omitted)].)
As to the DA’s application to speak to the defendant’s treating “doctors and staff” at Kirby, communications between a patient and his doctors, nurses, psychologists, and social workers are privileged unless waived. (See CPLR 4504 [doctor, nurse], 4507 [psychologist], 4508 [social worker].) Specifically, the psychologist-patient privilege, codified in CPLR 4507, provides that “confidential relations and communications between a psychologist . . . and his client are placed on the same basis as those provided by law between attorney and client, and nothing in such article shall be construed to require any such privileged communications to be disclosed.” Accordingly, “[a] psychologist, like an attorney, may not be called to testify to the accuracy of a client’s story or provide records of psychological treatment.” (S.B. v U.B., 38 Misc 3d 487, 496-497 [Sup Ct, Kings County 2012], citing People v Wilkins, 65 NY2d 172, 179 [1985].)
Additionally, federal privacy rules (the privacy rule) prohibit disclosure of a patient’s medical history without authorization, subject to certain exceptions. (See 45 CFR parts 160, 164.) Disclosure is authorized “in the course of any judicial or administrative proceeding,” in response to either a court order or subpoena. (45 CFR 164.512 [e] [1] [i], [ii].) “[T]he Privacy Rule sets out a floor of federal privacy protections whereby state laws that are ‘contrary’ to the Privacy Rule are preempted unless a specific exception applies.” (Arons v Jutkowitz, 9 NY3d 393, 414 [2007].)
In New York State, the Mental Hygiene Law provides greater protection than the federal privacy rule. Mental Hygiene Law § 33.13 (c) (1) provides, in pertinent part that
“information about patients or clients reported to the offices [of mental health or for people with developmental disabilities] . . . shall not be a public record and shall not be released by the offices or its facilities to any person or agency outside of the offices except . . . pursuant to an order of a court of record requiring disclosure upon a finding by the court that the interests of justice significantly *416 outweigh the need for confidentiality” (emphasis added).
However, in such a hearing, the DA has a separate right to “apply to the court for an order directing that the defendant submit to an examination by a psychiatric examiner designated by the district attorney, and such psychiatric examiner may testify at the hearing.” (CPL 330.20 [15].) Here, no such application for an exam was made, only (1) a request for medical records (which was granted by Justice Schecter) and (2) an application to authorize W.T.’s treating doctors and staff to speak to the DA regarding W.T.’s treatment and care.
Contrary to the DA’s position, a person whom the Commissioner seeks to retain in a mental hospital does not put his mental state at issue by merely demanding a hearing on the Commissioner’s retention application. (People v Christopher B., 102 AD3d 115, 122 [1st Dept 2012] [“(b)y requesting a retention hearing, defendant merely invoked a statutory due process right to defend against the State’s allegation” (emphasis added)], citing Matter of Barbara W., 142 Misc 2d 542 [Sup Ct, Albany County 1988].)
While the DA maintains that the defendant’s waiver of privilege via his earlier insanity plea applies to the instant civil commitment proceeding as a complete waiver, citing to People v Al-Kanani (33 NY2d 260, 264 [1973] [holding that a defendant in a criminal case who asserts insanity as a defense and offers evidence to prove his insanity effects a complete waiver of privilege]), nevertheless, the civil proceeding at issue is separate from the 1982 criminal action in which the defendant originally pleaded guilty by reason of mental illness. (See People v Escobar, 61 NY2d 431, 438 [1984].) Therefore, the waiver effected in the defendant’s 1982 criminal case does not bind the defendant in the new civil commitment proceeding, to which the rules of civil procedure apply. (Id.)
Further, the DA’s assertion that requesting a hearing pursuant to CPL 330.20 operates as a wholesale exception to privacy rules, as it inherently puts the defendant’s mental state at issue, is misplaced. A defendant who requests a hearing merely invokes his statutory right to defend against the State’s allegation, and such defendant is not considered to have put his mental state at issue by merely requesting the hearing. (People v Christopher B., 102 AD3d 115, 122 [1st Dept 2012], citing Matter of Barbara W., 142 Misc 2d 542 [Sup Ct, Albany County 1988].) To the contrary, Mental Hygiene Law § 33.13 expressly *417 prevents disclosure unless there is a finding that the interests of justice specifically outweigh the need for confidentiality. (See e.g. Matter of K.M., 51 Misc 3d 322 [Sup Ct, NY County 2016].)
Moreover, the DA’s position that a release of a defendant’s medical records, pursuant to a court order, automatically waives confidentiality as to all of his or her otherwise privileged communications is neither supported by statute nor case law. (See CPL 330.20; Matter of K.M., 51 Misc 3d 322 [Sup Ct, NY County 2016].) The cases to which the DA cites for the proposition that the defendant’s privilege has been waived in toto by virtue of the release of his medical documents, Arons v Jutkowitz (9 NY3d 393, 415 [2007]) and Dillenbeck v Hess (73 NY2d 278, 284 [1989]), are inapposite. Both Arons and Dillen-beck are medical malpractice cases, rather than commitment or retention hearings, in which the plaintiffs affirmatively put their health at issue by filing lawsuits and, therefore, effected complete waivers of their physician-patient privileges, so that the court need not distinguish between the forms in which plaintiffs’ medical information may be found (e.g., medical records versus medical testimony). There is no such complete waiver here, as the defendant has not affirmatively put his mental health at issue, as he is merely exercising his due process right to defend, and it was only through Judge Schecter’s court order that the DA obtained access to W.T.’s medical records. (See People v Christopher B., 102 AD3d 115, 122 [1st Dept 2012].)
Finally, the DA maintains that it may speak to the defendant’s doctors, despite the federal privacy rule, even without his consent, when the patient is given notice of the request for the records. As indicated, the privacy rule presents a floor, not a ceiling, to disclosure in New York. (Arons v Jutkowitz, 9 NY3d 393, 414 [2007].) While the privacy rule (45 CFR 164.512 [e] [1] [i], [ii]) authorizes disclosure by a court order or subpoena, Mental Hygiene Law § 33.13 (c) (1) allows disclosure only “upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality.” Therefore, the balancing test of Mental Hygiene Law § 33.13 (c) (1) must be applied, as it provides greater privacy protections. Here, however, the DA has not even alleged that the interests of justice significantly outweigh the need for confidentiality.
The importance of the psychologist-patient privilege has long been recognized by state and federal courts in civil cases. The US Supreme Court opined on the unique need for a psychologist-patient privilege:
*418 “[effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.” (Jaffee v Redmond, 518 US 1, 10 [1996].)
In enacting even greater protections than the federal privacy rule, New York State has underscored that, where a defendant’s liberty is at stake, a patient’s need to speak freely to his or her psychologist far outweighs the need for disclosure. (See People v Wilkins, 65 NY2d 172 [1985] [precluding testimony of a treating psychologist even where a defendant put his mental health at issue].)
In the case at bar, the DA failed to establish that the interests of justice significantly outweigh the need for confidentiality, in that the necessity for the disclosure requested (authorizing treating doctors and staff to speak) does not significantly outweigh W.T.’s right to confidentiality. (Mental Hygiene Law § 33.13 [c] [1].) In fact, the court notes that, to prepare for the underlying proceeding, if the DA finds that the medical records provided are insufficient to sustain its burden, the DA has a statutory right to request an independent psychiatric examination by a non-treating examiner who may testify at the hearing, a procedure which the DA does not appear to have pursued. (CPL 330.20 [15].) Thus, the DA has made no showing that it has sought the use of a non-treating examiner and that more is necessary. If upon review of the records and the independent examiner’s potential testimony, the DA still believes that it cannot meet its burden in the underlying proceeding, an application may be made to the court outlining the specific need to speak with the defendant’s treating doctors and staff, with sufficient supporting proof. It is noted that the within application by the DA is supported only by an affidavit by an Assistant District Attorney, to which no supporting medical proof or expert affirmations/affidavits are attached.
For the reasons set forth above, this court denies the application by the DA for an order authorizing the doctors and *419 staff of Kirby Forensic Psychiatric Center to speak with the DA in regards to the treatment and care of the defendant, because the within submissions fail to establish that the interests of justice significantly outweigh the need for confidentiality. (Mental Hygiene Law § 33.13 [c] [1].)
Accordingly, it is hereby ordered, that the application by the Nassau County District Attorney’s Office for an order directing the doctors and staff of Kirby Forensic Psychiatric Center to speak with the District Attorney’s Office in regards to the treatment and care of W.T. is denied.

 The court notes that the DA incorrectly states in its affidavit in support that the defendant’s hearing will be held pursuant to Mental Hygiene Law § 33.13 (c) (1) (Abensur aff in support ¶ 2), the confidentiality statute, and not pursuant to CPL 330.20 (8), which enables the defendant to request such a hearing.